UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY G. MEAD,

      Plaintiff,

v.

RICHARD BURKART *et al.*,

      Defendants

Case No. 20-cv-10721
Hon. Matthew F. Leitman

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (ECF NO. 16)**

In 2007, the Michigan Supreme Court held in *People v. Labelle*, 732 N.W.2d 114 (Mich. 2007), that when a driver consents to a search of the interior of her car, a police officer may validly search a bag left inside the car by one of the passengers. Seven years later, Defendant Richard Burkart, an officer with the City of Jackson Police Department, did what *Labelle* authorized officers to do. He stopped a vehicle driven by Rachel Taylor, obtained her consent to search the interior of the vehicle, and searched a backpack left in the vehicle by passenger Larry Mead, the Plaintiff in this action. Burkart found drugs inside Mead's backpack, and Mead was subsequently charged with and convicted of possession of methamphetamine. In Mead's direct appeal of his conviction, the Michigan Supreme Court overruled *Labelle* and held that Burkart's search of Mead's backpack violated the Fourth

1

Amendment. *See People v. Mead*, 931 N.W.2d 557 (Mich. 2019). The court then vacated Mead's conviction.

Mead thereafter filed this civil rights action. (*See* Compl., ECF No. 1.) Mead originally asserted federal and state law claims against Burkart, the City of Jackson, and the County of Jackson, but he now pursues only one claim. In that claim, which he brings under 42 U.S.C. § 1983, he alleges that Burkart's search of his backpack violated his Fourth Amendment right to be free from an unreasonable search and seizure.

Now before the Court is Burkart's motion for summary judgment. (*See* Mot., ECF No. 16.) In that motion, Burkart argues that he is entitled to qualified immunity because in 2014, when he conducted the search of Mead's backpack, it was not clearly established that his search violated the Fourth Amendment. The Court agrees. Accordingly, the Court **GRANTS** Burkart's motion for summary judgment and **DISMISSES** Mead's Complaint.

I

A

In 2007, the Michigan Supreme Court decided *Labelle*, 732 N.W.2d 114. In that case, police officers stopped a vehicle for failure to come to a stop. *See id.* During the stop, "the driver consented to [a] search" of the interior of the vehicle. *Id.* at 114–15. Officers then searched the vehicle. During that search, the officers

searched a backpack that had been left inside the vehicle. *See People v. LaBelle*, 729 N.W.2d 525, 527 (Mich. Ct. App. 2006), rev'd 732 N.W.2d 114 (Mich. 2007). The backpack belonged to a passenger who had been riding in the vehicle with the driver. *See id.* The officer found marijuana in the backpack, and the passenger was thereafter charged with drug possession. *See id.* Before trial, the passenger successfully moved to suppress the drugs as the fruit of an illegal search. *See id.* The Michigan Court of Appeals affirmed. *See id.* at 533.

On application for leave to appeal, and in lieu of granting leave to appeal, the Michigan Supreme Court reversed and held that the evidence should not have been suppressed. *See Labelle*, 732 N.W.2d 114. The court first concluded that the passenger lacked standing to challenge the search because "the stop of the vehicle was legal[.]" *Id.* at 115. The court then ruled that, in any event, "[t]he search of the interior of the vehicle," including the passenger's backpack, "was valid because the driver consented to the search." *Id.* at 114–15. The court explained:

> Authority to search the entire passenger compartment of the vehicle includes any unlocked containers located therein, including the backpack in this case. Moreover, the defendant did not assert a possessory or proprietary interest in the backpack before it was searched but, rather, left the backpack in a car she knew was about to be searched.

*Id.* at 115.

**B**

Seven years after *Labelle*, in May 2014, Burkart observed Taylor driving a vehicle with an expired license plate. (*See* Deposition of Officer Richard Burkart, ECF No. 16-4, PageID.177.) He then conducted a traffic stop of the vehicle. (*See id.*) Mead was a passenger in the car. (*See id.*)

Burkart approached the car and asked Taylor and Mead for identification. (*See id.*) Taylor said that she did not have a valid driver's license. (*See id.*) Burkart then asked her to exit the car and asked for her consent to search the car. (*See id.*, PageID.179.) She consented. (*See id.*)

Burkart then returned to the car and asked Mead to exit the car. (*See id.*, PageID.180.) Mead left his backpack on the passenger-side floorboard and stepped out of the car.[1] (*See id.*, PageID.181.) Burkart then searched the passenger side of the car, opened Mead's backpack, and found methamphetamine inside. (*See id.*) Mead confirmed to Burkart the backpack was his, and Burkhart then arrested him. (*See id.*, PageID.182.)

---

[1] In both his deposition testimony and his response to the present motion, Mead insists that Burkart directed him to leave the backpack in the car. (*See* Resp., ECF No. 21, PageID.229–230.) Burkart disputes this, and the video of the stop does not appear to show any such direction from Burkart. But the dispute over whether Burkart directed Mead to leave the backpack in the vehicle does not prevent the Court from entering summary judgment because, as Mead candidly acknowledged at oral argument on the motion, that fact is not material to the dispositive legal question before the Court.

## C

Based on the evidence obtained in Burkart's search of Mead's backpack, Mead was charged with possession of methamphetamine. Before trial, he moved to suppress the drugs on the basis that Burkart's search of his backpack was invalid. The trial court denied his motion, citing the Michigan Supreme Court's decision in *Labelle*. As noted above, *Labelle* held that when a driver consents to a search of the passenger compartment of the car, the officer may then validly search "any unlocked containers located therein," including a backpack belonging to a passenger in that car who did not consent to the search. *Labelle*, 732. N.W.2d at 115. Mead was later convicted by a jury at trial.

## D

Mead then appealed his conviction. In his appeal, he challenged the trial court's denial of his motion to suppress. The Michigan Court of Appeals held that, under *Labelle*, the search of Mead's backpack was lawful. *See People v. Mead*, 2016 WL 4804081 (Mich. Ct. App. Sep. 13, 2016) ("*Mead I*"). The court therefore upheld the trial court's denial of Mead's motion to suppress, and it affirmed his conviction. *See id*.

Mead sought leave to appeal the Michigan Court of Appeals' decision to the Michigan Supreme Court. Instead of granting leave, the Michigan Supreme Court vacated the Michigan Court of Appeals' decision and remanded the case back to the

Court of Appeals to determine, among other things, whether Mead's case was distinguishable from *Labelle*. *See People v. Mead*, 892 N.W.2d 379 (Mich. 2017) ("*Mead II*"). On remand, the Michigan Court of Appeals held that Mead's case was not distinguishable from *Labelle*, and it again affirmed his conviction. *See People v. Mead*, 908 N.W.2d 555 (Mich. Ct. App. 2017) ("*Mead III*").

E

Mead again sought leave to appeal to the Michigan Supreme Court. *See Mead*, 931 N.W.2d 557 ("*Mead IV*"). This time, that court expressly overruled *Labelle* and held that the search of Mead's backpack violated the Fourth Amendment. *See id.* at 559.

The Michigan Supreme Court's analysis proceeded in several steps. First, the court addressed whether Mead had "standing" to assert a Fourth Amendment challenge to the search of his backpack. *See id.* at 561. As discussed above, in *Labelle*, the Michigan Supreme Court had previously held that a passenger lacked standing to object to the search of a backpack found in the interior of a car where the driver consented to the search. *See Labelle*, 732 N.W.2d at 115. Now, in *Mead IV*, the Michigan Supreme Court changed course. Citing the decision of the United States Supreme Court in *Rakas v. Illinois*, 439 U.S. 128, 148–49 (1978), the court explained that in order "[t]o invoke the Fourth Amendment's protections, a defendant must first establish that he had a legitimate expectation of privacy in the

area searched." *Mead IV*, 931 N.W.2d at 562. Drawing further on *Rakas*, the court noted that "[o]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude." *Id.* at 562–63 (quoting *Rakas*, 439 U.S. at 144, n.2.). The court then concluded that while Mead "had no (and claimed no) legitimate expectation of privacy in the interior of Taylor's vehicle, he had a legitimate expectation of privacy in his backpack," and he could thus "challenge the search of his backpack on Fourth Amendment grounds." *Id.* at 563.

The court then turned to the question of whether Taylor's consent to search her car authorized Burkhart to search Mead's backpack. The court acknowledged its earlier holding in *Labelle* that a driver's consent to search the interior of a vehicle authorized police officers to search "any unlocked containers located therein," which in that case "includ[ed] the [non-consenting passenger's] backpack." *Labelle*, 732 N.W.2d at 115. The court concluded that *Labelle* was wrong on this point too. The court stressed that valid consent to search must come from "the property's owner," "a third party who shares common authority over the property," or "a third party with *apparent* common authority." *Id.* at 564 (emphasis in original). The court then explained that under the United States Supreme Court's decision in *Illinois v. Rodriguez*, 497 U.S. 177 (1990), the "following standard" governs whether an officer may rely on a third person's apparent common authority:

7

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment … 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises? If not, then the warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Id.* at 564 (quoting *Rodriguez*, 497 U.S. at 188–89).

Next, the court held that the *Rodriguez* framework for assessing the legality of consent searches applied to searches of property seized from a vehicle during a traffic stop:

> We want to be precise in describing how the occurrence of the search in an automobile affects the analysis. That the search took place in a car is one fact that may inform whether, based on the totality of the circumstances, a defendant had a legitimate expectation of privacy in the place searched. The law recognizes that expectations of privacy are diminished in an automobile when compared, for example, to a home. *Byrd*, 584 U.S. at ––––, 138 S.Ct. at 1526. *Once a court has determined that the defendant had a legitimate expectation of privacy in the place searched, however, there is no "automobile exception" to the requirements for a consent search. The same law governs consent searches whether the place to be searched is a person's pocket, car, or home.* Thus we need not "extend" *Rodriguez* to the specific context of automobiles; it is already the rule from *Rodriguez*. See *Rodriguez*, 497 U.S. at 188-189, 110 S.Ct. 2793.

*Id.* at 563, n. 3 (emphasis added).

Applying the *Rodriguez* framework, the court concluded that Taylor lacked actual or apparent authority to consent to the search of Mead's backpack. *See id.* at 565. The court observed that "Taylor was like a ride-share driver who has only short-term contact with passengers – an objectively reasonable officer would not believe (absent unusual circumstances) that an Uber driver could consent to the search of his passenger's purse, for example." *Id.* The court therefore concluded that Taylor's consent to search her vehicle did not extend to Mead's backpack. *See id.*

The court held that since Mead had a legitimate expectation of privacy in his backpack and since Taylor's consent to search her car did not authorize the police to search Mead's backpack, "the search of [Mead's] backpack violated the Fourth Amendment." *Id*. at 566.

F

On March 18, 2020, Mead filed the instant action in this Court. (*See* Compl., ECF No. 1.) Mead's Complaint lists three defendants: (1) Burkart; (2) the City of Jackson (the "City"); and (3) the County of Jackson (the "County"). Mead asserts the following seven claims arising out of Burkart's search of his backpack and his subsequent conviction and incarceration: (1) a Section 1983 claim against Burkart alleging that Burkart's search of his (Mead's) backpack violated his (Mead's) Fourth Amendment rights (Count I); (2) a Section 1983 municipal liability claim against the City (Count II); and (3) five state law claims, including (a) false arrest/imprisonment,

9

against all Defendants (Count III); (b) gross negligence, against Burkart and the City (Count IV); (c) malicious prosecution, against all Defendants (Count V); (d) malicious prosecution, against Burkart and the City (Count VI); and (e) malicious prosecution, against the County (Count VII). (*See id.* at ¶¶ 41–89, PageID.6–15.)

### G

On June 11, 2020, the County moved to dismiss Mead's claims against it (Counts III, V, and VII). (*See* Mot. to Dismiss, ECF No. 7.) Mead did not oppose the County's motion. Instead, he stipulated to the entry of an order dismissing his claims against the County. The Court entered that order on July 1, 2020. (*See* Order, ECF No. 10.)

### H

On September 9, 2021, Burkart and the City (collectively, the "Moving Defendants") filed the current motion for summary judgment on Mead's claims against them (Counts I–VI). (*See* Mot., ECF No. 16.) The Moving Defendants first argue that Burkart is entitled to qualified immunity on Mead's Section 1983 claim against him because the search did not violate clearly established law. (*See id.*, PageID.131.) They next argue that Mead's federal claim against the City fails under the test for municipal liability in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See id.*, PageID.136–140.) Finally, they argue that Mead's state-law claims fail for several reasons. (*See id.*, PageID.141–146.)

Mead responded to the motion on November 24, 2021. (*See* Resp., ECF No. 21.) In that response, Mead says that he does not oppose dismissal of his claims against the City, nor of all of his state-law claims. He again confirmed that position during the hearing before the Court on April 5, 2022. The Court therefore **GRANTS** summary judgment in favor of the Moving Defendants with respect to those claims (Counts II–VI).

However, Mead does oppose dismissal of his Fourth Amendment claim against Burkart under Section 1983 (Count I of the Complaint). Mead contends that Burkart is not entitled to qualified immunity with respect to that claim. (*See id.*, PageID.223.) The Court turns to Burkart's motion for summary judgment on Count I below.

## II

Burkart moves for summary judgment under Federal Rule of Civil Procedure 56. Under Rule 56, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be

11

insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

### III

### A

Burkart argues that he is entitled to qualified immunity on Mead's Section 1983 claim against him. "Qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "This immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions,' 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Once a defendant raises a qualified immunity defense, the "plaintiff bears the burden of showing that [the] defendant is not entitled to qualified immunity." *Id.*

"A qualified-immunity inquiry involves two questions: whether defendants violated a constitutional right and whether that right was clearly established."

12

*Brown*, 814 F.3d at 457. "These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages." *Id.*

In the qualified immunity context, "[t]he sources of clearly established law to be considered are limited. [Courts in this Circuit] look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth] [C]ircuit, and finally to decisions of other circuits." *Martin v. City of Broadview Heights*, 712 F.3d 951, 961 (6th Cir. 2013). Courts "must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 590 (2018) (quoting *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014)). Simply put, defining clearly established law "requires a high 'degree of specificity.'" *Id.* (quoting *Mullenix*, 136 S.Ct. at 309).

This specificity "is 'especially important in the Fourth Amendment context.'" *Id.* (quoting *Mullenix*, 136 S.Ct. at 308). Indeed, the Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment.'" *Id.* (quoting *White v. Pauly*, 137 S.Ct. 548, 552 (2017)). And "[w]hile there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the particular arrest 'beyond

13

debate.'" *Id.* (quoting *Al-Kidd*, 563 U.S. at 741). Thus, as the Sixth Circuit has explained, a "defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate.'" *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015) (quoting *Plumhoff*, 134 S.Ct. at 2023).

**B**

The Court begins with the "clearly established" prong of the qualified immunity inquiry. In order to carry his burden on that prong, Mead must show that at the time of Burkart's search, it was clearly established that a driver's consent to search the passenger compartment of her vehicle did not authorize the officer who obtained that consent to search a bag or backpack belonging to a passenger in the vehicle.

That is a particularly steep hill for Mead to climb in this case, given that (1) the Michigan Supreme Court reached the opposite conclusion in *Labelle*; and (2) *Labelle* had not yet been overruled at the time Burkart searched Mead's backpack. In light of *Labelle*, it would appear difficult to make a persuasive showing that at the time of Burkart's search, "any reasonable" Michigan police officer would have

14

understood that Taylor's consent did not authorize the search of Mead's backpack. *Wenk*, 783 F.3d at 598

But *Labelle*, of course, is not a decision of the United States Supreme Court or the Sixth Circuit. And as a decision of the Michigan Supreme Court, it does not clearly establish federal law. *See Martin*, 712 F.3d at 961. Thus, notwithstanding *Labelle*, Mead may still be able to show that the rule he relies upon – *i.e.*, that a driver's consent to search her vehicle does not authorize the search of a passenger's backpack – was clearly established when Burkart searched his backpack. To do so, he would have to identify pre-2014 decisions from the Supreme Court or Sixth Circuit (or a substantial body of out-of-circuit decisions) adopting the rule. But he has not cited any such decisions.

Mead's argument that the rule he relies on was clearly established essentially tracks the Michigan Supreme Court's reasoning in *Mead IV*. He argues that (1) *Rakas* clearly established his right to challenge the search of his backpack and (2) *Rodriguez* clearly established that Taylor's consent did not authorize Burkart's search of his backpack because Taylor lacked actual and/or apparent authority to grant consent. (*See* Resp., ECF No. 21, PageID.236–243.)

But Mead does not cite to any decision holding that the *Rodriguez* framework for evaluating third-party consent to search applies in the context of a driver's consent to search personal property found in the interior of her vehicle during a

15

traffic stop. The absence of such authority is fatal to Mead's effort to overcome Burkart's qualified immunity defense. As noted above, "in the Fourth Amendment context," in order to defeat a qualified immunity defense, it "is 'especially important'" to identify a controlling decision addressing the relevant circumstances. *Wesby*, 138 S.Ct. at 590 (quoting *Mullenix*, 136 S.Ct. at 308). And the Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment.'" *Id.* (quoting *White*, 137 S.Ct. at 552). Mead has failed to identify any such cases.

*Rodriguez*, itself, did not involve a question of third-party consent "under similar circumstances" – *i.e.*, circumstances involving a driver's consent to search the interior of her vehicle during a traffic stop. Instead, *Rodriguez* involved a question concerning third-party consent to search an apartment. *See Rodriguez*, 497 U.S. at 180. Thus, *Rodriguez* would not necessarily make clear to any reasonable officer that its rules concerning third-party consent apply when assessing the validity and scope of consent to search a vehicle given by a driver during a traffic stop.

Moreover, a reasonable officer could fairly question whether the rules concerning consent from *Rodriguez* apply to a driver's consent to search the interior of her vehicle during a traffic stop. That is because the Supreme Court "ha[s] on numerous occasions pointed out that cars are not to be treated identically with houses or Apartments for Fourth Amendment purposes." *Rakas*, 439 U.S. at 148.

Simply put, *Rodriguez* does not place "beyond debate" the question of whether Taylor's consent to search the interior of her vehicle authorized Burkart to search Mead's backpack that was seized from the vehicle.[2] *Wenk*, 783 F.3d at 598. *Rodriguez* thus does not clearly establish that the search was unlawful.

Mead responds by directing the Court to the Michigan Supreme Court's statement in *Mead IV* that "[a] *straightforward application of well-settled Fourth Amendment jurisprudence*" demonstrated that Burkart's search was unlawful. (*See* Resp., ECF No. 21, PageID.222 (emphasis added) (quoting *Mead IV*, 931 N.W.2d at 559).) Mead argues that this statement demonstrates that the search of his backpack violated clearly established Fourth Amendment law. Notably, however, the Michigan Supreme Court did not cite *any* federal case law in support of its conclusions that "there is no 'automobile exception' to the requirements for a consent search" and that "[t]he same law governs consent searches whether the place

---

[2] Mead also cites *Byrd v. United States*, 138 S. Ct. 1518 (2018) and *United States v. McCoy*, 181 F.3d 105 (Table) (6th Cir. 1999), in his briefing. However, during the hearing before the Court, he did not cite either of those decisions when directly asked to identify the best cases clearly establishing the rule on which he relies. He instead cited *Rakas* and *Rodriguez*. Moreover, neither *Byrd* nor *McCoy* involved a question concerning third-party consent in the context of the search of personal property seized from a vehicle during a traffic stop.

to be searched is a person's pocket, car, or home." *Id* at 563, n.3.³ And those conclusions were essential to that court's ultimate holding that Taylor's consent did not authorize Burkart's search because the consent did not satisfy the *Rodriguez* test. *Mead IV* thus does not show that at the time Burkart searched Mead's backpack, it was clearly established under federal law that Taylor's consent was insufficient to authorize the search of the backpack found in Taylor's vehicle.

In sum, Mead has not cited any federal decision holding that a driver's consent to search the interior of her vehicle is insufficient to authorize a search of a passenger's bag seized during a traffic stop. Mead's failure to cite such an on-point decision underscores that he has not carried his burden of showing that Burkart's search of his backpack violated clearly established federal law.

## C

Mead has not persuaded the Court that Burkart's search of his backpack violated clearly established law. Accordingly, Burkart is entitled to qualified immunity on Mead's Section 1983 claim against him.

---

³ The Court does not mean to suggest that it has any criticism of the Michigan Supreme Court's ruling in *Mead IV*. On the contrary, the Court believes that *Mead IV* is well-reasoned and consistent with the general rules applied by the Supreme Court. But notwithstanding the merit in *Mead IV*, it does not show that Burkart's search of Mead's backpack violated clearly established federal law.

18

## IV

For all of the reasons explained above, the Court **GRANTS** Moving Defendants' Motion for Summary Judgment (ECF No. 16). Mead's Complaint is therefore **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: May 11, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 11, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126